AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Western District of Arkansas
### Fayetteville Division

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| Motorola Cell Phone, Model | ) | Case No. ___22-CM-23 CDC___ |
| XT1952-6, IMEI 35704103002959 | ) | |
| Currently held at HSI Fayetteville | ) | |

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)* **Motorola Cell Phone, Model XT1952-6, IMEI 35704103002959, more particularly described on "Attachment A".**

The person or property to be searched, described above, is believed to conceal *(identify the person or describe the property to be seized)*: **See "Attachment B".**

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

■ evidence of a crime;

■ contraband, fruits of crime, or other items illegally possessed;

■ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 2252A(a)(5)(B) | Possession of Child Pornography |
| 18 U.S.C. § 1470 | Attempted Transfer of Obscene Material |

The application is based on these facts: **See Affidavit of HSI Special Agent William DeVito**

■ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

William DeVito, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: June 14, 2022

_____
*Judge's signature*

City and state:  Fayetteville, Arkansas

Christy Comstock, United States Magistrate Judge
*Printed name and title*

## Affidavit in Support of Application for Search Warrant

I, William DeVito, being duly sworn, depose and state as follows:

1.      I am a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI"), currently assigned to the Assistant Special Agent in Charge Office in Fayetteville, Arkansas. I have been so employed with HSI since July, 2011. As part of my daily duties as an HSI agent, I investigate criminal violations relating to child exploitation and child pornography including violations pertaining to the illegal production, distribution, online enticement, transportation, receipt and possession of child pornography, in violation of 18 U.S.C. §§ 2251, 2251A, 2422(b), 2252(a) and 2252A. I have received training in the area of child pornography and child exploitation, and have had the opportunity to observe and review numerous examples of child pornography (as defined in 18 U.S.C. § 2256) in all forms of media including computer media. I have also participated in the execution of numerous search warrants and arrest warrants, a number of which involved child exploitation and/or child pornography offenses. This Affidavit is being submitted based on information from my own investigative efforts as well as information obtained from others who have investigated this matter and/or have personal knowledge of the facts herein.

2.      I make this Affidavit in support of an application for a search warrant for the **SUBJECT ITEM, namely a Motorola Cell Phone**; which is presently located at the HSI office in Fayetteville, Arkansas. The **SUBJECT ITEM**, is more particularly described as electronic devices seized from Samuel ZUMMO, as set out in Attachment A. As such, it does not include all of the information known to me as part of this investigation, but only information sufficient to establish probable cause for the requested search warrant.

## **Statutory Authority**

3.      This investigation concerns alleged violations of Title 18, United States Code, Section 2252A(a)(5)(B), Possession of Child Pornography, Title 18 United States Code, Section 1470, Attempted Transfer of Obscene Material to a Minor.

a) Title 18, United States Code, Section 2252A(a)(5)(B) prohibits a person from knowingly possessing   or knowingly accessing with intent to view, any book, magazine, periodical, film, video-tape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer.

b) Title 18, United States Code, Section 1470 prohibits a person from knowingly using a facility or means of interstate commerce to transfer obscene material to a minor who has not attained the age of 16 or attempt to do such.

c) The term "minor," as defined in Title 18, United States Code, Section 2256(1), refers to any person under the age of eighteen years.

d) The term "sexually explicit conduct," Title 18, United States Code, Sections2256(2)(A)(i-v), is defined as actual or simulated (a) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; (b) bestiality; (c) masturbation; (d) sadistic or masochistic abuse; or (e) lascivious exhibition of the genitals or pubic areas of any person.

e) The term "visual depiction," as defined in Title 18, United States Code, Section2256(5), includes undeveloped film and videotape, data stored on computer disc or other electronic means which is capable of conversion into a visual image, and data which is capable of conversion into a visual image that has been transmitted by any means, whether or not stored in a permanent format.

f) The term "computer," as defined in Title 18 United States Code, Section 1030(e)(1), means an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical, arithmetic, or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

g) The term "child pornography," as defined in Title 18, United States Code, Section 2256(8), means any visual depiction, including any photograph, film, video, picture, or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where (a) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (b) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (c) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

## TECHNICAL BACKGROUND

4.      Based on my training, knowledge and experience, your Affiant is aware that individuals who commit online sexual exploitation offenses involving minors will often collect and/or view child pornography on their computer, and digital media storage devices, for several

reasons:

a.  They may receive sexual gratification and satisfaction, and/or fantasize about sexual contact with minors by viewing minors engaged in sexual activity or sexually suggestive poses;

b.  They may collect sexually explicit or suggestive materials in a variety of media for their own sexual arousal and gratification;

c.  They almost always possess and maintain their material in the privacy and security of their home or some other secure location. Child pornography distributors/collectors typically retain recordings, mailing lists, child erotica and store their child pornography amongst other, otherwise legal media or files. Digital evidence, like child pornography contraband, is different than traditional evidence that can be concealed, sold, used and/or destroyed and is not as volatile as other illegal items like narcotics; and

d.  Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure and private environment, such as a computer and surrounding area. These collections are often maintained for several years and are kept close by to enable the owner to view the collection, which is valued highly.

e.  They also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same

interests in child pornography.

f.  They generally prefer not to be without their child pornography for any prolonged time period. This behavior has been documented by law enforcement officers involved in the investigation of child pornography throughout the world.

g.  Increasingly, individuals who produce, distribute, transport, receive, or possess child pornography, or who attempt to commit these crimes, use mobile computing devices to do so. These portable devices can connect to the Internet at an individual's residence, or also through routers and wireless routers in various public and private locations. Mobile computing devices and electronic storage media such as laptops, tablets, smart phones, and flash drives, often travel with the person utilizing them and are commonly found in residences during search warrants.

5.  Your Affiant knows computers serve four basic functions in connection with child pornography: production, communication, distribution and storage. Photographs and other digital images must be stored as data on a computer or other digital media device using specialized software to transfer images from a digital camera to a computer, or other electronic storage device, or by transferring images saved onto a media card to a computer or electronic storage device.

6.  Your Affiant knows that if a child pornography viewer chooses to upgrade their electronic storage device, it is a simple process to transfer images from one device to another device. After the photograph or other image has been transferred onto the computer, the computer stores the data from the image as an individual "file." Such a file is generally known as a "GIF" (Graphic Interchange Format) or "JPEG" (for the Joint Photographic Experts Group, which wrote the standard file, recognizable by the ".gif" or ".jpg" file extensions (hereinafter referred to as an "image file.")) Computers are capable of rendering the digital image on a computer screen, transferring the image

to another computer, and/or printing the image.

7.     Your Affiant knows that computer hardware, other digital devices, software, and electronic files are important to a criminal investigation in two distinct ways: the objects themselves may be contraband, evidence, instrumentalities, or fruits of a crime; and/or the objects may be used as storage devices that contain contraband, evidence, instrumentalities, or fruits of crime in the form of electronic data.

8.     The computer's capability to store images in digital form makes it an ideal repository for child pornography.  The size of electronic storage media (commonly referred to as a "hard drive") used on the home computers has grown tremendously within the last several years.  Hard drives with the capacity of 160 gigabytes are not uncommon.  These drives can store thousands of images at very high resolution.  Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, process that image in a computer with a video capture board, and save that image to storage in another country.  Once this is done, there is no readily apparent evidence at the "scene of the crime."  Only with careful laboratory examination of electronic storage devices is it possible to recreate the evidence trail.

9.     Your Affiant knows from training and experience that computer systems commonly consist of computer processing units (CPU's) hard disks, hard disk drives, display screens, keyboards, printers, modems (used to communicate with other computers), electronic cables, USB flash drives, and other forms of magnetic and optical media containing computer information.

10.     Your Affiant knows from training and experience that computers and magnetic and optical media are used to store information.  In addition to the above-mentioned image files, that information often includes data files or other persons engaged in similar activities with minors, and lists of other exploited minors, as well as records of correspondence and conversations (printed or

electronic) with such persons.

11.     In addition to being evidence of a crime, there is probable cause to believe that the computers and their storage devices, the monitor, keyboard, printer, modem and other system components were used as a means of committing offenses involving the sexual exploitation of minors in violation of law. Accordingly, permission is sought herein to search computers and related devices consistent with the scope of the requested search.

12.     In addition to offenders who collect and store child pornography, law enforcement has encountered offenders who obtain child pornography from the Internet, view the contents and subsequently delete the contraband, often after engaging in self-gratification. In light of technological advancements, increasing Internet speeds and worldwide availability of child sexual exploitative material, this phenomenon offers the offender a sense of decreasing risk of being identified and/or apprehended with quantities of contraband. This type of consumer is commonly referred to as a 'seek and delete' offender, knowing that the same or different contraband satisfying their interests remain easily discoverable and accessible online for future viewing and self-gratification.  Your Affiant knows that, regardless of whether a person discards or collects child pornography he/she accesses for purposes of viewing and sexual gratification, evidence of such activity is likely to be found on computers and related digital devices, including storage media, used by the person. This evidence may include the files themselves, logs of accounts, access events, contact lists of others engaged in trafficking of child pornography, backup files, and other electronic artifacts that may be forensically recoverable.

13.     Based on my training and experience, and that of computer forensic agents that your Affiant works and collaborates with on a daily basis, your Affiant knows that every type and kind of information, data, record, sound or image can exist and be present as electronically stored information

on any of a variety of computers, computer systems, digital devices, and other electronic storage media. Your Affiant also knows that electronic evidence can be moved easily from one digital device to another. As a result, your Affiant believes that electronic evidence may be stored on any of the digital devices seized.

14.     Based on your Affiant's training and experience, and your Affiant's consultation with computer forensic agents who are familiar with searches of computers, you Affiant knows that in some cases the items set forth in Attachment B may take the form of files, documents, and other data that is user-generated and found on a digital device. In other cases, these items may take the form of other types of data - including in some cases data generated automatically by the devices themselves.

15.     Based on your Affiant's training and experience, and your Affiant's consultation with computer forensic agents who are familiar with searches of computers, I believe there is probable cause to believe that the items set forth in Attachment B will be stored in those digital devices for a number of reasons, including but not limited to the following:

   a. Once created, electronically stored information (ESI) can be stored for years in very little space and at little or no cost. A great deal of ESI is created, and stored, moreover, even without a conscious act on the part of the device operator. For example, files that have been viewed via the Internet are sometimes automatically downloaded into a temporary Internet directory or "cache," without the knowledge of the device user. The browser often maintains a fixed amount of hard drive space devoted to these files, and the files are only overwritten as they are replaced with more recently viewed Internet pages or if a user takes affirmative steps to delete them. This ESI may include relevant and significant evidence regarding criminal activities, but also, and just as

importantly, may include evidence of the identity of the device user, and when and how the device was used. Most often, some affirmative action is necessary to delete ESI. And even when such action has been deliberately taken, ESI can often be recovered, months or even years later, using forensic tools.

b.   Wholly apart from data created directly (or indirectly) by user-generated files, digital devices - in particular, a computer's internal hard drive - contain electronic evidence of how a digital device has been used, what it has been used for, and who has used it. This evidence can take the form of operating system configurations, artifacts from operating systems or application operations, file system data structures, and virtual memory "swap" or paging files. Computer users typically do not erase or delete this evidence, because special software is typically required for that task. However, it is technically possible for a user to use such specialized software to delete this type of information - and, the use of such special software may itself result in ESI that is relevant to the criminal investigation. In particular, to properly retrieve and analyze electronically stored (computer) data, and to ensure accuracy and completeness of such data and to prevent loss of the data either from accidental or programmed destruction, it is necessary to conduct a forensic examination of the computers. To effect such accuracy and completeness, it may also be necessary to analyze not only data storage devices, but also peripheral devices which may be interdependent, the software to operate them, and related instruction manuals containing directions concerning operation of the computer and software.

16.     *Forensic evidence.* As further described in Attachment B, this application seeks permission to locate not only electronically stored information that might serve as direct evidence of the crimes described on the warrant, but also forensic evidence that establishes how the Device was used, the purpose of its use, who used it, and when.  There is probable cause to believe that this forensic electronic evidence might be on the Device because:

- Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).  Virtual memory paging systems can leave traces of information on the storage medium that show what tasks and processes were recently active.  Web browsers, e-mail programs, and chat programs store configuration information on the storage medium that can reveal information such as online nicknames and passwords.  Operating systems can record additional information, such as the attachment of peripherals, the attachment of USB flash storage devices or other external storage media, and the times the computer was in use.  Computer file systems can record information about the dates files were created and the sequence in which they were created.

- Forensic evidence on a device can also indicate who has used or controlled the device. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

- A person with appropriate familiarity with how an electronic device

works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

- The process of identifying the exact electronically stored information on a storage medium that are necessary to draw an accurate conclusion is a dynamic process. Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators. Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves. Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

- Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

17.    *Nature of examination.* Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant your Affiant is applying for would permit the examination of the devices consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection in order to determine whether it is evidence described by the warrant.

## Summary of the Investigation to Date

18.     On April 27, 2022, your Affiant was contacted by the Eureka Springs Police Department (ESPD) regarding an ongoing sexual assault investigation.  It was explained that on January 25, 2022, the Arkansas State Police (ASP) contacted the ESPD in reference to a sexual assault that may have occurred within the city limits of Eureka Springs, Arkansas. The alleged victim is currently 15 years old (referred to herein as JANE DOE), and the alleged offender is Samuel ZUMMO, who is 24 years old.  JANE DOE disclosed to bringing ZUMMO into the home and having sexual intercourse with him and ZUMMO had possibly sent photos to JANE DOE that were sexual in nature.

19.     On February 01, 2022, an ASP Investigator spoke with JANE DOE who stated she sent ZUMMO photographs of herself, but none containing nudity.  She also stated ZUMMO had sent her photographs of himself and his "private areas".  She advised they were using Snapchat and never saved any of the photos.  She stated she knew how old ZUMMO was and ZUMMO also knew how old she was and that her and ZUMMO engaged in sexual intercourse.

20.     On February 08, 2022, ZUMMO was interviewed and denied all allegations, he let investigators search his cellular device, including his Snapchat account, but nothing was discovered during a cursory search.

21.     On February 21, 2022, ESPD Detective Paul Sebby spoke with D.P., an acquaintance of JANE DOE.  D.P. advised that in mid-January 2022, JANE DOE had given him the login information for her Snapchat and he logged into the account and observed a Snapchat conversation with ZUMMO.  D.P. stated he observed a photograph of JANE DOE's breasts sent to ZUMMO and it showed ZUMMO saved it.  D.P. said she told him about the photo and confirmed it was her.  Additionally, she told him about sneaking ZUMMO into her house through

a window and having sexual intercourse with him. D.P. also saw the chats between ZUMMO and JANE DOE and for the most part they were flirtatious in nature but he read one from ZUMMO saying, "You can get me in so much trouble for this". D.P. also stated ZUMMO provided her with marijuana and "vapes".

22. A review of the "my eyes only" section of JANE DOE's Snapchat account revealed several photos of her breasts exposed, some of which appeared they were taken at school. There were several different pictures of penises but no indication of who sent them. The videos located start with a recording of JANE DOE's face and then the camera pans over to a male subject with his left arm above his head wearing a white beanie, who appears to look like ZUMMO. JANE DOE was later shown the video as well as a still photo captured from the video, she stated the man in them was "Sam" (ZUMMO) and it was recorded the night they had sex.

23. On February 08, 2022, ZUMMO was interviewed and denied any involvement with JANE DOE and claimed to have never been in a private setting with her. ZUMMO provided Detective Sebby consent to search his phone and a cursory search was conducted. On March 24, 2022, an arrest warrant was signed by Judge Ramsey for Sexual Assault 4th Degree. ZUMMO was taken into custody and his phone was seized; a search was then obtained for ZUMMO's phone. On April 04, 2022, ESPD received a mobile case of the device from HSI Fayetteville. Detective Sebby then started conducting a review of the mobile case and observed the following image:

(a)  SHA1 Hash - 1f0188095bd231206b63ef187c070c3707ccc6db

MD5 Hash - ce86324721c3686b7295f19524b82d8e

This image is a four picture "collage"; the top left photo is of a female on her hands and knees performing oral sex on an adult male while a dog is mounted on her back; the top right photo is an apparent underage female performing oral sex on an adult male; the bottom left photo is the

face of a female minor who does not appear to be wearing a shirt but the photo is cut off below her shoulders; the bottom right photo is taken from the point of view of a male receiving oral sex from a minor female. (This file has an exact hash value that is associated with an image/video which appears to depict at least one (1) child previously identified by law enforcement as well as an exact hash value associated with a file previously submitted to the National Center for Missing & Exploited Children (NCMEC's) Child Recognition and Identification System.

### Conclusion

24.     Based on the foregoing information, probable cause exists to believe there is located on, the **SUBJECT ITEM**, evidence of violations of Title 18, United States Code, Section 2252A(a)(5)(B), Possession of Child Pornography, and Title 18, United States Code, Section 1470, Attempted Transfer of Obscene Material to a Minor.  Your Affiant prays upon his honorable court to issue a search warrant for the **SUBJECT ITEMS** for the items set forth in attachment "B" (which is attached hereto and incorporated herein by reference), that constitute evidence, fruits, and instrumentalities of violation of  Title 18, United States Code, Section 2252A(a)(5)(B), Possession of Child Pornography and Title 18 United States Code 1470, Attempted Transfer of Obscene Material to a Minor.

William DeVito, Special Agent
Homeland Security Investigations

Affidavit subscribed and sworn to before me this 14th day of June, 2022.

Honorable Christy Comstock
United States Magistrate Judge